# IN THE COURT OF APPEALS OF IOWA

No. 15-1510
Filed December 9, 2015

IN THE INTEREST OF L.C.,
Minor Child,

C.C., Mother,
Appellant,

D.M., Father,
Appellant,

K.M., Grandmother,
Intervenor-Appellant.

_____

Appeal from the Iowa District Court for Appanoose County, William S. Owens, Associate Juvenile Judge.

A mother, father, and grandmother-intervenor appeal termination of the parents' parental rights. **AFFIRMED ON ALL APPEALS.**

Amy S. Montgomery of Craver & Goethe, LLP, Centerville, for appellant mother.

Robert F. Bozwell, Jr., Centerville, for appellant father.

Julie De Vries, De Vries Law Office, PLC, Centerville, for intervenor-appellant grandmother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Debra A. George of Griffing & George Law Firm, PLC, Centerville, attorney and guardian ad litem for minor child.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**DOYLE, Judge.**

L.C., born in September 2014, tested positive for methamphetamine and alcohol at birth. When the child was one day old, the Iowa Department of Human Services (Department) filed a Child in Need of Assistance (CINA) petition and an application requesting the child be removed from his parents' care. L.C. was subsequently placed in the Department's legal custody, and the child was placed in foster care, where the child has since remained. Almost a year after his birth, a termination-of-parental-rights hearing was held concerning L.C. Thereafter, the juvenile court entered its order terminating the parents' parental rights. The court, employing the proper three-step analysis, *see In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010), found the State proved grounds for termination as to each parent under Iowa Code section 232.116(1)(h) (2015), termination of each parent's parental rights was in the child's best interests, and none of the exceptions set forth in section 232.116(3) applied. Specifically, the court concluded:

> [The mother] has been offered numerous opportunities to participate in substance abuse treatment including opportunities to participate in residential treatment that would have allowed her an opportunity to have [the child] placed with her. [The mother] entered a residential program for a brief period, but later left against the advice of her treatment provider. [The mother] was given an opportunity to return to the program but refused. [The father] tested positive for methamphetamine use during the time the CINA case was pending, and while he has participated in some outpatient treatment sessions, he has also never successfully completed treatment.
>
> In light of this record, it is clear [the child] cannot be returned to the custody of his parents today. The child has been removed since the time of his birth and has never returned to the custody of a parent since that date. As heretofore stated, the parents have been offered a number of services to address the concerns that gave rise to the [Department's] involvement, but the parents have not progressed in services and are no closer to [the child] being returned today than they were when he was first removed.

The court also found placing the child in a guardianship "would clearly not be appropriate."

The parents now appeal, separately. Additionally, the child's maternal grandmother, who intervened in the case, appeals. Our review is de novo. *See In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014).

**REASONABLE EFFORTS.** The mother first argues the State failed to provide to her reasonable reunification services. Although the State has an obligation to provide reasonable services, the parent has an obligation to demand different or additional services the parent may require prior to the termination hearing. *See In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999). If a parent does not request additional services at the appropriate time, the argument that the Department did not make reasonable efforts is waived, and the parent may not later challenge it in the termination proceeding. *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002). The mother does not identify on appeal what additional or alternative services would have increased her parenting skills. Furthermore, nothing in the record shows the mother requested other, different, or additional services prior to the termination hearing. Therefore, "the issue of whether services were adequate has not been preserved for appellate review." *See S.R.*, 600 N.W.2d at 65.

Even so, the record evidences the mother was offered and received numerous services since, and even prior to, the date of the child's removal from her care, including substance-abuse treatment. That the mother failed to avail herself to the services does not mean the State failed to provide the services. Rather, it is clear the mother chose to ignore her addictions and mental-health

issues throughout the case despite the services the State provided to her to overcome these issues. The State met its burden of providing reasonable services to the mother.

**GROUNDS FOR TERMINATION.** The father argues the State failed to prove the ground for termination found by the court under Iowa Code section 232.116(1)(h). Specifically, he argues he testified he was ready, willing, and able to have the child returned to his care at the time of the termination hearing, challenging only the fourth element of the ground. *See* Iowa Code § 232.116(1)(h)(4). However, the father actually testified, in response to the question of whether he could care for the child on his own, that "it's been a long time since I took care of a baby, but I'm willing to try, you know what I mean." That he was willing to try does not evidence that he was able to care safely for the child at the time of the termination hearing.

The father testified he last used drugs in September 2014, and had participated in substance-abuse treatment. Nonetheless, he testified he intended to continue his relationship with the mother, as well as living with her. He admitted she needed help with her mental health and alcohol issues, and he testified he missed visits with the child because he was helping take care of the mother. While it is commendable that he wants to help the mother, the focus here is the child. Because the mother did not address her issues during the case, and because the father continues to live with the mother, there is no question the child could not be placed safely in the father's care at the time of the termination hearing.

**FACTORS IN TERMINATION.** Both parents assert the termination of their parental rights was not in the child's best interests. In determining "whether to terminate parental rights based on a particular ground, we must give primary consideration to 'the child's safety, . . . the best placement for furthering the long-term nurturing and growth of the child, and . . . the physical, mental, and emotional condition and needs of the child.'" *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (quoting Iowa Code § 232.116(2)). We simply cannot deprive a child of permanency after the State has proved a ground for termination because we hope "someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014). Rather, "[t]he legislature has established time frames to balance the need to provide parents with a reasonable opportunity to resume care of their [child] and the [child's] long term best interests." *Id.* at 109.

Here, the mother admits she and the father "have struggled with stability of housing, transportation, telephone service, employment, and substance abuse treatment." Though we believe both parents love the child, the father intended to continue his relationship with the mother, and she chose not to address her substance abuse or mental health issues within the allotted statutory time frame. The public policy of the state having been legislatively set, we are obligated to heed the statutory time periods for reunification. Considering the relevant factors noted above, we agree with the juvenile court that termination of each parent's parental rights was in the child's best interests.

**EXCEPTIONS TO TERMINATION.** The mother asserts termination of her parental rights would be detrimental to the child, and we should apply the

exception set forth in section 232.116(3)(c) and find termination unnecessary. *See D.W.*, 791 N.W.2d at 709. "The factors weighing against termination in section 232.116(3) are permissive, not mandatory, and the court may use its discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *A.M.*, 843 N.W.2d at 113 (citation and internal quotation marks omitted). Here, there appeared to be a minimal bond between the child and the mother. Even so, the mother chose not to address her issues that would allow the child to return safely to her care. We do not find that termination would be detrimental to the child based solely on the closeness of the parent-child relationship. Consequently, we agree with the juvenile court that clear and convincing evidence supports the termination of the mother's parental rights.

**INTERVENOR.** Finally, the child's maternal grandmother, who intervened in the case, also appeals the termination of the parents' parental rights, arguing the court should have established a guardianship with her rather than terminate the parents' parental rights. However, we question whether she has standing here to make such a challenge, given that the child was not in her care, nor was she standing in the parents' place. *See J.C.*, 857 N.W.2d at 505 (discussing "standing in the place of the parents of the child" and section 232.111(4)(b)(6)); *see also Citizens for Responsible Choices v. City of Shenandoah*, 686 N.W.2d 470, 475 (Iowa 2004) (noting that to have standing, "a complaining party must (1) have a specific personal or legal interest in the litigation and (2) be injuriously

affected"). In any event, we agree with the child's guardian ad litem and the State that a guardianship was not in the child's best interests.

Here, the evidence shows the intervenor withdrew her request for a home study when she learned it would not be approved. The child's older siblings were removed from her care thereafter. Even assuming the grandmother had standing to appeal the termination of the parents' parental rights, we do not find a guardianship in the child's best interests, given that the home study was not completed because the grandmother believed it would not be approved.

We also note the court ordered the child be placed in the legal custody of the Department for placement in an appropriate foster or pre-adoptive home, which can include a relative. *See, e.g.*, Iowa Code § 232.117(3)(c) (providing that a relative may be considered for guardianship and custody if the court terminates the parental rights of the child's parents). The court did not preclude the Department from considering placement with the grandmother as a guardian in the future. In fact, the court specifically noted that pursuant to Iowa Code section 232.118, an interested party can pursue a judicial review of the guardianship order as set forth within that section.

Because we agree with the juvenile court that the State proved the ground for termination under section 232.116(1)(h), termination of the parents' parental rights was in the child's best interests, and no exception to termination applied under the facts of this case, we affirm the juvenile court's order terminating the parents' parental rights in all respects.

**AFFIRMED ON ALL APPEALS.**