# IN THE SUPREME COURT OF IOWA

No. 08–1890

Filed October 29, 2010

**CASEY McGILL; GINGER L. McGILL; ASHLEA D. McGILL;** and **CASEY McGILL,** As Parent and Next Best Friend of AMANDA R. McGILL, ALICIA C. McGILL, and ALLISON C. McGILL, Minors,

Appellees,

vs.

**BEN FISH, THOMAS VINE, MARK NEWTON, ROBERT SELBY,** and **STEVEN SHAFFER,**

Appellants.

Appeal from the Iowa District Court for Johnson County, Denver D. Dillard, Judge.

Interlocutory appeal from the district court's denial of a motion to dismiss for lack of subject matter jurisdiction. **REVERSED AND REMANDED.**

Thomas J. Miller, Attorney General, and Joanne Moeller, Assistant Attorney General, for appellants.

Donald G. Beattie and Ryan T. Beattie of Beattie Law Firm, P.C., Des Moines, for appellees.

**CADY, Justice.**

In this appeal, we must decide whether a personal injury claim based on gross negligence brought by a state employee against coemployees is a common law action subject to the administrative provisions of the Iowa Tort Claims Act (ITCA) or whether it is an action under Iowa Code section 85.20 (2009)[1] not subject to the requirements of the Act. The district court found the plaintiffs were not required to comply with the exhaustion requirements of the ITCA and denied the motion to dismiss filed by the State for failing to exhaust administrative remedies. The State sought, and we granted, interlocutory review. On our review, we reverse the decision of the district court and remand the case for dismissal of the claims against the state employees.

## I. Background Facts and Proceedings.

Casey McGill was employed by the water works department of the University of Iowa in 2006. He filed a lawsuit in the Iowa district court for personal injuries allegedly suffered while performing maintenance at the physical plant on August 31, 2006. His wife and minor children joined him as plaintiffs in the lawsuit. McGill and his family asserted a negligence claim against the manufacturer of the treatment system at the plant, as well as other known and unknown defendants associated with the treatment process of the plant. The McGills also included a gross negligence claim against five coemployees of the University of Iowa. The McGills claimed the coemployees were supervisors who failed to properly

---

[1]Although the injury at issue in this case occurred in 2006, we will refer to the 2009 version of the Iowa Code, unless otherwise noted, for ease of reference because it contains subsection designations in the relevant statutes that were not present in the 2005 Code. No other pertinent amendments to any of the statutes relevant to the disposition of this case were made.

train McGill on working with hazardous materials and to provide him with protective clothing and equipment.

The State filed a motion to dismiss the claims against the five coemployees. It asserted the petition against the coemployees constituted a claim against the State under the ITCA. Consequently, the State argued the district court was without subject matter jurisdiction over the gross negligence claim against the coemployees because the McGills failed to exhaust the administrative procedures under the Act by filing a claim with the State prior to filing their claim for gross negligence in district court against the five state employees.

The McGills responded to the motion by arguing that their coemployee gross negligence claim was expressly authorized by Iowa Code section 85.20(2) and constituted an exception to the requirements of the ITCA as a claim brought by an employee under the workers' compensation law. *See* Iowa Code § 669.14(5). They also argued that a requirement that a state employee choosing to sue a coemployee must first file an administrative claim with the state pursuant to the tort claims act would violate the Equal Protection Clause of the United States and Iowa Constitutions. The McGills did not dispute the absence of an administrative claim filed with the State. They also did not contest the authority of the State to file the motion to dismiss on the ground that the district court lacked jurisdiction.

The district court denied the motion to dismiss. It found the action for gross negligence against the five state employees constituted a claim under Iowa Code section 85.20 and was not subject to the provisions of the ITCA. The State sought, and we granted, interlocutory review.

## II.  Standard of Review.

The grant or denial of a motion to dismiss is reviewed for errors at law.  *Geisler v. City Council of Cedar Falls*, 769 N.W.2d 162, 165 (Iowa 2009).  We accept as true the facts alleged in the petition and typically do not consider facts contained in either the motion to dismiss or any of its accompanying attachments.[2]  *Id.*  To the extent that we review constitutional claims, our review is de novo.  *State v. Taeger*, 781 N.W.2d 560, 564 (Iowa 2010).

## III.  Iowa Tort Claims Act.

Generally, the State may be sued for damage caused by the negligent or wrongful acts or omissions of state employees while acting within the scope of employment to the same extent that a private person may be sued.  Iowa Code § 669.2(3)(*a*); *see also Magers-Fionof v. State*, 555 N.W.2d 672, 674 (Iowa 1996) (recognizing the ITCA permits an injured party to recover damages for the negligent or wrongful acts of state employees " 'where the state, if a private person, would be liable to the claimant for such damage' " (quoting Iowa Code § 669.2(3)(*a*) (1995))).

---

[2]The petition filed by the McGills in district court generally alleged the district court had subject matter jurisdiction over the claims.  Yet, averments in pleadings for the purposes of a motion to dismiss are conclusive only as to well-pleaded facts. *Citizens for Responsible Choices v. City of Shenandoah*, 686 N.W.2d 470, 473 (Iowa 2004).  Thus, the State in this case was permitted to challenge subject matter jurisdiction by way of a motion to dismiss despite the general allegations of jurisdiction in the petition.  *See* Iowa Ct. R. 1.421(1)(*a*).  Additionally, the State was permitted to include its affidavit in support of the motion to dismiss.  *Citizens*, 686 N.W.2d at 473. The McGills did not challenge this affidavit, but claimed the district court had subject matter jurisdiction because the lawsuit was excepted from the requirements of the ITCA.  Accordingly, the motion to dismiss and resistance to the motion properly framed the issue of subject matter jurisdiction.  *See id.* (recognizing a motion to dismiss for lack of jurisdiction can consider concessions made in response to the motion).  Additionally, the motion and resistance necessarily conceded that the coemployees acted within the scope of employment with the state.  A claim against an employee of the state falls under the ITCA only if the injury is caused by the negligent or wrongful acts or omissions of a state employee while within the scope of employment.  Iowa Code § 669.2(3)(*b*).

The state employees who engage in the negligent or wrongful conduct that gives rise to the lawsuit may also be personally sued. *See id.* § 669.2(3)(*b*) (defining claims against coemployees). Yet, as long as the employee was acting within the scope of employment at the time of the incident at the center of the lawsuit, the suit is deemed to be an action against the state.[3] *Id.* § 669.5(2). Once a lawsuit against a coemployee is deemed to be an action against the state under the ITCA, the state is substituted as a defendant in place of the coemployee in the event the state was not already a named defendant. *Id.* Furthermore, the state is normally required to indemnify the employee against any claim. *Id.* § 669.21.

Lawsuits against the state were first authorized in 1965 when the legislature waived its sovereign immunity by enacting the Iowa Tort Claims Act. *See* 1965 Iowa Acts, ch. 79 (codified at Iowa Code ch. 25A (1966)). The Act gives the district court exclusive jurisdiction over such lawsuits. Iowa Code § 669.4. As a condition to waiving its immunity, the legislature established an administrative procedure for litigants to follow prior to commencing an action in the district court. *Id.* § 669.5. Although some portions of this procedure have been amended since the date of its enactment, the Act has always required a claim to be filed with an agency or department of the state before the lawsuit could be filed in district court. *See* Iowa Code §§ 25A.3, .5 (1966); *id.* § 669.5 (2009). The ITCA now requires a claim first be filed with the director of the

---

[3]A lawsuit commenced against a state employee who is alleged to have been acting within the scope of employment at the time of the incident giving rise to the claim is subsequently deemed to be an action against the state upon the occurrence of one of two events. The first event is when the attorney general certifies that the defendant was an employee acting in the scope of employment. Iowa Code § 669.5(2)(*a*). The second event occurs if the attorney general refuses to file a certification. *Id.* § 669.5(2)(*b*). If this occurs, the defendant may petition the court to make a finding that the defendant was a state employee acting within the scope of employment. *Id.*

department of management. *Id.* § 669.3(2). Among other things, the administrative process allows the state attorney general an opportunity to dispose of the claim through payment, settlement, or other disposition. *Id.* § 669.3(1). A lawsuit may not be filed in district court before a final disposition by the attorney general, unless the attorney general fails to dispose of the claim within six months and the claimant provides notice to the attorney general of the intent to withdraw the claim from further consideration. *Id.* § 669.5(1).

The procedural requirements of the ITCA are jurisdictional. *Swanger v. State,* 445 N.W.2d 344, 349–50 (Iowa 1989). The district court does not acquire subject matter jurisdiction over a claim unless the administrative procedures have been exhausted. *Id.* A claim must be dismissed if the district court has no subject matter jurisdiction. *Feltes v. State,* 385 N.W.2d 544, 549 (Iowa 1986).

The claim brought by the McGills against the five state employees falls within the definition of a "claim" under the ITCA. *See* Iowa Code § 669.2(3)(*b*) (including in the definition of a claim against the state "[a]ny claim against an employee of the state for money . . . on account of personal injury . . . caused by the negligent or wrongful act or omission [of the state employee] . . . while acting within the scope of . . . employment"); *see also Unertl v. Bezanson,* 414 N.W.2d 321, 326–27 (Iowa 1987) (recognizing gross negligence is not a distinct cause of action but a measure of conduct in a cause of action for negligence). Thus, the McGills' claim is subject to the administrative exhaustion requirements of the ITCA unless it falls under an enumerated exception within the Act.

The ITCA provides numerous exceptions from its provisions. Iowa Code § 669.14. One type of claim excepted from the provisions of the Act is: "Any claim by an employee of the state which is covered by the Iowa

workers' compensation law or the Iowa occupational disease law, chapter 85A." *Id.* § 669.14(5).

Without directly interpreting the operative language of section 669.14(5), the district court took the position that coemployee gross negligence claims are excepted from the ITCA as claims under the workers' compensation laws. The McGills argue this same point on appeal. They claim gross negligence claims fall under the workers' compensation law because section 85.20 excludes coemployee gross negligence claims from the exclusivity provisions of the workers' compensation law over claims by injured workers. *See id.* § 85.20(2).

As asserted by the State, the issue on appeal involves statutory interpretation. As such, the statute in dispute is our starting point in the resolution of the issue. The question is whether the legislature intended to exclude state employee claims based on gross negligence of coemployees from the ITCA by excepting claims by state employees "covered by the Iowa workers' compensation law."

We do not search for legislative intent beyond the express language of a statute when that language is plain and the meaning is clear. *Voss v. Iowa Dep't of Transp.*, 621 N.W.2d 208, 211 (Iowa 2001). When the language is unambiguous, it expresses the intent of the legislature that can otherwise be obscured by ambiguous language in a statute. Consequently, our starting point in statutory interpretation is to determine if the language has a plain and clear meaning within the context of the circumstances presented by the dispute. *State v. Wiederien*, 709 N.W.2d 538, 541 (Iowa 2006). We only apply the rules of statutory construction when the statutory terms are ambiguous. *Id.*

An ambiguity in a statute can arise in two ways. *Id.* First, it may arise from the meaning of particular words in the statute. *Id.* Second, it

may arise from the general scope and meaning of a statute in its totality. *Id.* Moreover, an ambiguity exists only if reasonable minds could differ on the meaning. *State v. Albrecht*, 657 N.W.2d 474, 479 (Iowa 2003).

Generally, we presume words used in a statute have their ordinary and commonly understood meaning. *City of Sioux City v. Iowa Dep't of Revenue & Fin.*, 666 N.W.2d 587, 590 (Iowa 2003). We rely on the dictionary as one source to determine the meaning of a word left undefined in a statute. *State v. Lane*, 743 N.W.2d 178, 182 (Iowa 2007).

The word in the statute at the center of this case is "covered." The ITCA excepts claims "covered by the Iowa workers' compensation law." Iowa Code § 669.14(5). The asserted ambiguity in section 669.14(5) is tied to section 85.20 of the workers' compensation law. With one exception, section 85.20 establishes the workers' compensation law as the exclusive remedy for an employee to seek compensation from an employer or coemployee for injuries arising out of and in the course of employment. *Id.* § 85.20 (stating the workers' compensation laws provide the exclusive rights and remedies of employees at common law and otherwise for covered injuries). The exclusivity of the workers' compensation laws applies to all claims against the employer, but recognizes an exception for claims against a coemployee. Under section 85.20(2), the workers' compensation laws are the exclusive remedy against coemployee claims provided the injury was "not caused by the other employee's gross negligence." *Id.* § 85.20(2). In essence, the McGills assert this section makes coemployee gross negligence claims "covered" by the workers' compensation laws, while the State argues the exception of a claim from the exclusivity of a statute does not mean the claim is "covered" under the statute declaring the exception.

The dictionary discloses numerous definitions of the word "cover" or "covered." *See Webster's Third New International Dictionary* 524, 525 (unabr. ed. 2002). However, in the context of its adjectival use in section 669.14(5), the word "cover" or "covered" has but one meaning. As used in section 669.14(5), the word "cover" in its ordinary sense means "to comprise, include, or embrace in an effective scope of treatment or operation . . . to treat or deal with." *Id.* at 524. Specifically, the definition of "cover" has been illustrated in a dictionary with a comment related to the scope of a law. *MacMillan Dictionary*, definition of cover, http://www.macmillandictionary.com/dictionary/british/cover (last visited Oct. 18, 2010) ("[I]f a law, rule, or contract covers a particular situation, type of person, etc., it includes or deals with that situation or person.").

The plain meaning of the word "covered" under section 669.14(5) means the claim excluded from the ITCA must be one that is included in and dealt with by the workers' compensation laws. The workers' compensation laws clearly do not include coemployee gross negligence claims within their provisions, and they do not deal with such claims. Instead, the workers' compensation laws do just the opposite. They exclude coemployee gross negligence claims from their coverage. The workers' compensation laws abolish all other claims against employers and coemployees except negligence claims against coemployees based on a degree of conduct known as "gross negligence." Iowa Code § 85.20(1)– (2).

In view of the common dictionary meaning of the word "covered," no reasonable person could differ on its meaning in the context of section 669.14(5). The word used as an adjective in the statute describes the claims excluded from the ITCA as those included or otherwise dealt with

in the workers' compensation laws. Moreover, no reasonable person could conclude the Workers' Compensation Act includes and deals with coemployee gross negligence claims by merely excluding the claims from the Act.

It is clear the legislature intended to exclude claims by state workers for workers' compensation against the State from the ITCA. *See id.* § 85.2 (including state workers and the state, as an employer, within the workers' compensation scheme). This case presents an occasion when the language used in a disputed statute is plain and unambiguous. Coemployee gross negligence claims brought by a state worker are not excluded from the provisions of the ITCA.

Notwithstanding, the McGills turn from the textual framework of the ITCA and rely on our prior cases to argue state coemployee gross negligence claims do not fall under the ITCA. They argue coemployee gross negligence claims are independent of the ITCA because such claims fall under section 85.20(2).

We have on prior occasions referred to coemployee gross negligence claims as an "action under Iowa Code section 85.20." *Walker v. Mlakar,* 489 N.W.2d 401, 404 (Iowa 1992). However, such references have only identified the statutory source that exempted the claims from the exclusivity of the workers' compensation scheme for employees and employers. Instead, we have made it clear that section 85.20 does not recognize or create a cause of action based on gross negligence, but merely recognizes a restriction on an existing common law right of action against a coemployee for negligence by including a portion of the claim within the exclusivity of the workers' compensation scheme. *Unertl*, 414 N.W.2d at 326–27. Moreover, the ITCA did not create a new cause of action, but recognized a remedy for existing causes of action previously

unavailable because of sovereign immunity. *Engstrom v. State*, 461 N.W.2d 309, 314 (Iowa 1990). One of those existing causes of action was coemployee gross negligence. *See Unertl*, 414 N.W.2d at 326–27 (recognizing gross negligence as a measure of conduct rather than a distinct cause of action).

## IV. Constitutional Claim.

The McGills further assert that section 669.14(5) would violate the Equal Protection Clause of our state and federal constitutions if the exception does not include coemployee gross negligence claims. If coemployee gross negligence claims are not excluded from the provisions of the ITCA, the McGills argue a state worker injured by a coemployee through grossly negligent conduct in the scope of employment would be barred from suing the coemployee, while a nonstate worker injured by a coemployee under the same circumstances would not be barred from suing the coemployee.

We reject the equal protection claim based on its false premise. The McGills reason that a state employee would be essentially barred from suing a coemployee because the state is deemed to be the defendant in the lawsuit against a state employee once a determination is made that the coemployee acted within the scope of employment. Iowa Code § 669.5. They assert this procedural determination under the ITCA would act to bar further proceedings because section 85.20 bars all claims by injured workers against employers, including gross negligence claims. However, there is no indication whatsoever our legislature sought to bar coemployee gross negligence claims by state workers when it amended the procedures in the ITCA to require the state to be substituted as a defendant in the lawsuit once it is determined the coemployee acted in the course of employment. *See id.* § 669.5(2)(*a*)

(stating "the suit commenced upon the claim shall be deemed to be an action against the state *under the provisions of this chapter*" (emphasis added)). Moreover, we do not interpret statutes in a manner that would render the statute unconstitutional if a reasonable alternate interpretation exists that passes constitutional muster. *See State v. Hernandez-Lopez*, 639 N.W.2d 226, 233 (Iowa 2002) ("[I]f the statute is capable of being construed in more than one manner, one of which is constitutional, we must adopt that construction.").

## V. Conclusion.

We conclude the district court erred by denying the motion to dismiss filed by the State. We reverse the decision of the district court and remand the case to the district court for further proceedings.

**REVERSED AND REMANDED.**