Verna **ALDEN, As Executrix of the Estate of William Alden, Deceased, Appellant,**

v.

**GENIE INDUSTRIES, Defendant,**

and

**Richard Justice, Appellee.**

No. 90–168.

Supreme Court of Iowa.

Sept. 18, 1991.

Gerald J. Kucera of the Tom Riley Law Firm, P.C., Cedar Rapids, for appellant.

Minor Barnes, Terry J. Abernathy and Matthew G. Novak of Pickens, Barnes & Abernathy, Cedar Rapids, for appellee Justice.

Gregory M. Lederer and Matthew Petrzelka of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for defendant Genie Industries.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

The appellant's husband, William Alden, was fatally injured in a work-related accident on April 27, 1988. Pursuant to Iowa Code section 85.20(2) (1991), appellant then instituted an action against the decedent's supervisor, Richard Justice, alleging gross negligence. A summary judgment against the appellant and in favor of the appellee, Richard Justice, was granted by the trial court and sustained by the court of appeals. We granted review and now reverse.

The uncontested facts indicate that William Alden, Burl Gibbs and Richard Justice were all employees of the Delaware Community School District Maintenance Department. Justice was the immediate supervisor of both Gibbs and Alden. On the day before the fatal accident, Alden and his coworker, Gibbs, were painting flagpoles using the school district's manlift. Although the manlift was equipped with outriggers to provide stability, the outriggers could not be extended since the manlift was being operated from the bed of a pickup truck. The extra height provided by placing the manlift in the bed of the truck was apparently necessary to reach the top of the flagpoles.

On the day of the accident, Justice met with Gibbs and told him that he and Alden should continue with the painting project, which would that day involve light poles. Gibbs objected to this request on the ground that it was too windy to safely use the manlift. Nevertheless, Justice responded, "see if you can finish the job." Gibbs and Alden commenced painting, again operating the manlift from the bed of the pickup without use of the outriggers. During the course of painting one of the light poles, the lift collapsed causing Alden

to fall to the ground and sustain his fatal injuries.

The deposition testimony submitted in conjunction with the motion for summary judgment was in conflict over whether Justice instructed Gibbs and Alden to operate the manlift from the bed of the pickup. Gibbs asserts that Justice instructed them to use the manlift in the truck to paint both the flagpoles and the light poles. In contrast, Justice denies ever issuing such an instruction.

Our review of a successful motion for summary judgment is for correction of errors at law. Iowa R.App.P. 4. To sustain a motion for summary judgment, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R.Civ.P. 237(c). Accordingly, we must revisit the three elements necessary to establish coemployee gross negligence under Iowa Code section 85.20—as enumerated in *Thompson v. Bohlken*, 312 N.W.2d 501 (Iowa 1981)—and then decide whether there are any disputed material facts pertaining to one or more of these elements. In particular, we must consider whether there are any disputed material facts bearing on element three of the *Thompson* test, given that the district court based its grant of a summary judgment on the absence of a material factual controversy surrounding this third element.

Iowa Code chapter 85 bars an employee's suit against his coemployees for injuries sustained in the course of employment except where the coemployee's conduct constitutes "gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another." Iowa Code § 85.20(2) (1991). The elements necessary to establish gross negligence were first enumerated in *Thompson*, 312 N.W.2d at 501. There we concluded that the three elements are:

(1) knowledge of the peril to be apprehended;

(2) knowledge that the injury is a probable, as opposed to a possible, result of the danger; and

(3) a conscious failure to avoid the peril. *Id.* at 505.

Although the district court found element three to be central to the facts presented, in this case, elements two and three are effectively coalesced. The factual controversy surrounding the alleged order by Justice to use the manlift without outriggers would, if proved, demonstrate a "knowledge that the injury is probable" as well as "a conscious failure to avoid the peril." However, insofar as the alleged act is affirmative in nature, it is somewhat awkward to refer to it as "a conscious failure to avoid the peril." We, therefore, will consider the extent to which the facts herein give rise to a material dispute bearing on some aspect of element two.

Element two requires more than a showing of the defendant's actual or constructive knowledge of the "actuarial foreseeability—even certainty—that 'accidents will happen'.... Unless the defendants [are shown to have known] that their conduct would place their coemployees in imminent danger, so that someone would probably—more likely than not—be injured because of the conduct, then the knowledge does not satisfy the essential elements of a section 85.20 gross negligence action...." *Henrich v. Lorenz*, 448 N.W.2d 327, 334 n. 3 (Iowa 1989). In short, the plaintiff must show that the defendant knew or should have known that his conduct placed the plaintiff in a zone of imminent danger.

Under existing case law, the requisite showing of a zone of imminent danger has been made in one of two ways. First, it can be made by proving defendant's actual or constructive awareness of a history of accidents under similar circumstances. *See Henrich*, 448 N.W.2d at 333 (stating that four injuries in a meat-cutting device that had processed 3.1 million meat sections did not give rise to a zone of imminent danger); *Taylor v. Peck*, 382 N.W.2d 123, 127–28 (Iowa 1986) (concluding that in the absence of previous accidents or recent safety inspections, a punch press is not a zone of

imminent danger); *Thompson,* 312 N.W.2d at 505 (where no other injuries had occurred on a particular metal press, it was found not to be a zone of imminent danger); *see also Eister v. Hahn,* 420 N.W.2d 443, 446 (Iowa 1988) (noting that it was not the practice of farmers to shut down the engine of a combine when clearing the corn head of debris). The second context in which we have found a zone of imminent danger is where the high probability of harm is manifest even in the absence of a history of accidents or injury. *See Swanson v. McGraw,* 447 N.W.2d 541, 545 (Iowa 1989) (use of chemicals clearly labeled as caustic in proximity to protective clothing that defendants knew was torn constituted a zone of imminent danger); *Larson v. Massey–Ferguson, Inc.,* 328 N.W.2d 343, 346 (Iowa App.1982) (proximity to an unshielded vertical auger gave rise to an obvious danger). The facts herein satisfy this latter definition of a zone of imminent danger. The defendant-appellee, Richard Justice, freely admits that the operation of the manlift from the bed of the pickup without outriggers was unsafe, even on a windless day.

To satisfy element two of the *Thompson* test, the plaintiff must show not only the existence of a zone of imminent danger, but that the defendant knew or should have known that their conduct caused the plaintiff to be in that zone. With respect to this second requirement, the deposition testimony submitted in conjunction with the motion for summary judgment is in conflict. Gibbs testified that Justice instructed him to operate the manlift from the bed of the pickup throughout the course of their painting project. If this were found by the trier of fact to be true, the appellant would have sustained her burden of showing that the defendant, Justice, knew that his conduct would place the decedent in a zone of imminent danger and, consequently, that the defendant was grossly negligent. In opposition to Gibb's testimony, Justice denies ever having issued such an order.

The resolution of this material fact is for the trier of fact. We conclude that the district court erred when it granted a summary judgment and thereby preempted consideration of this conflict in testimony by the trier of fact. We therefore reverse and remand for further proceedings consistent with this opinion.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.